UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LITMON, JR., | No. C-10-3894 EMC |
| Plaintiffs | |
| v. | **AMENDED/CORRECTED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| EDMUND G. BROWN, Attorney General of California, | (Correction in bold and green highlight) |
| Defendants. | **(Docket No. 8)** |

Plaintiff, David Litmon, Jr., brings this action, *pro se*, against Defendant, Edmund G. Brown, Attorney General of California ("DOJ"). Plaintiff seeks injunctive relief. Plaintiff first contends that the California Department of Justice's Policy requiring that individuals adjudicated to be sexually violent predators register in-person every ninety days violates Plaintiff's due process rights. Second, Plaintiff alleges that the in-person registration requirement constitutes double jeopardy in violation of his Fifth Amendment rights. Pending before the Court is Defendant's motion to dismiss for failure to state a claim for relief. Having considered the parties' briefs and accompanying submissions, as well as oral argument, the Court hereby **GRANTS** Defendant's motion **with** prejudice.

### I.   FACTUAL & PROCEDURAL BACKGROUND

California Penal Code § 290.012(b) requires individuals adjudicated as sexually violent predators by § 6600 of the Welfare and Institutions Code to verify their residence once every ninety days "in a manner established by the Department of Justice." Cal. Penal Code § 290.012(b). The

Department of Justice ("DOJ") requires that registration be in-person at a police station. *See* Compl. at 3.

Plaintiff was convicted of sex crimes on May 22, 1982, and as part of his sentence, was required to register as a sex offender annually within five days of his birthday. *Id.*, p. 2. In 1996, the Sexually Violent Predator Act ("SVPA"), Welfare and Institutions Code § 6600 *et seq.* was enacted. The SVPA provides that those convicted of certain sex offenses may be civilly committed for treatment for up to two years after serving their prison sentence. Before his release on parole, the People filed a petition to have Plaintiff committed as an SVP pursuant to *Welfare and Institutions Code* § 6604. *See Litmon v. Flores*, 2008 U.S. Dist. LEXIS 58545 (order on Plaintiff's petition for habeas corpus reciting procedural history, including his criminal proceedings and proceedings pursuant to § 6604). On May 2, 2000, after a jury trial, Plaintiff was civilly committed as a SVP. *See id.* at *2 (citing *People v. Litmon*, No. H029335, 2007 WL 1219972 at *2). As mandated by the statute, the trial court committed Plaintiff for two years from May 2, 2000 to May 2, 2002. *Id.* Plaintiff appealed. The California Court of Appeal for the Sixth Appellate District, in an unpublished opinion, affirmed the trial court's original determination that Plaintiff was an SVP. *See People v. Litmon*, 2002 Cal. App. Unpub. LEXIS 8195, *1, *25.

Subsequently, Plaintiff was recommitted from May 2, 2002 until May 2, 2004. Compl. at 2. On September 29, 2005, a third petition was filed to extend Plaintiff's involuntary commitment as an SVP for a two-year term, running from May 2, 2006 until May 2, 2008. *See People v. Litmon*, 162 Cal. App. 4th 383, 391 (2008). On March 15, 2007, without trial, the Superior Court of Santa Clara County issued a retroactive order committing Plaintiff under the new provisions of the statute permitting a person who had been civilly committed as an SVP to be subject to an indeterminate term of commitment commencing on the date of his original commitment. *Id.* at 389. The Superior Court's order committed Plaintiff to an indeterminate term of commitment as an SVP restropectively commencing on May 2, 2000, the date of his original commitment. *Id.* at 389-90. Plaintiff appealed.

On April 23, 2008, the California Court of Appeals reversed the trial court decision to re-commit Plaintiff for an indeterminate period, but left his underlying SVP determination undisturbed.

1  *See People v. Litmon*, 162 Cal. App. 4th 383 (2008).  Plaintiff was released from custody on
2  September 4, 2009.  Compl. at 2.
3        As a convicted SVP, upon release from custody, Plaintiff must comply with Penal Code
4  § 290.012(b) requiring him to register once every ninety days as well as DOJ's implementation of
5  Penal Code § 290.012(b) that the registration be in-person.  *Id.* at 2-3.
6        Plaintiff brought the instant action challenging the legality of this registration requirement.
7  Plaintiff asserts that the in-person registration requirement is not authorized by the statute, that the
8  requirement constitutes double jeopardy, and due process because he has "been unable to obtain
9  employment as a truck driver, since such employment could likely cause him to miss the ninety-day
10  appearance at the police station," Compl. at 3.
11        On December 15, 2010, Defendant filed a Motion to Dismiss for failure to state a claim.
12  While not explicitly stated in the Complaint, the nature of Plaintiff's challenge is a facial challenge
13  to the DOJ interpretation and implementation of § 290.012(b).  He has sued only the DOJ seeking to
14  invalidate § 290.012(b) as interpreted by the DOJ, and not any of the local law enforcement agencies
15  for their particular application of the registration requirements.

## II.    LEGAL STANDARDS

17  A.    Motion to Dismiss
18        Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if
19  it fails to state a claim upon which relief can be granted.  In considering a 12(b)(6) motion, the court
20  must take all well-pleaded allegations in the complaint as true and construe them in the light most
21  favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009);
22  *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).  To survive a Rule 12(b)(6) motion to
23  dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."
24  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires
25  the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted
26  unlawfully."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  While a complaint need not contain
27  detailed factual allegations, legal conclusions or broad allegations of ultimate facts are not sufficient.
28  *Id.* at 1949-50.  Courts should not accept "a legal conclusion couched as a factual allegation," or

"naked assertions [of unlawful conduct] devoid of further factual enhancement." *Id.* (internal quotation marks omitted); *see also Herbage v. Meese*, 747 F. Supp. 60, 65 (D.D.C. 1990) ("A plaintiff's bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion to dismiss.") (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id..* at 1949 (citing *Twombly,* 550 U.S. at 556). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 129 S.Ct. at 1949.

### III. DISCUSSION

The Court construes Plaintiff's claims generally, to include three arguments: (1) DOJ acted *ultra vires* in requiring in-person registration where the statute did not specifically require it; (2) the statute, as applied here, so restricts Plaintiff's ability to seek employment that he has been unconstitutionally deprived of liberties guaranteed the Fourteen Amendment Due Process clause; (3) the in-person registration requirement violates Plaintiff's right against Double Jeopardy. The Court finds that Plaintiff has failed to state a claim for relief.

A.   The DOJ Did Not Act *Ultra Vires* With the In-Person Registration Requirement

Agency action must "be within the scope of authority conferred" by the Legislature. *County of San Diego v. Bowen*, 166 Cal. App. 4th 501, 508 (2008) (quoting Cal. Gov. Code § 11342.1) (discussion limitations on agency actions). "Whenever by the express or implied terms of any statute state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute" Cal. Gov.Code, § 11342.2; *see also Agnew v. State Bd. of Equalization*, 21 Cal. 4th 310, 321 (1999) (discussing the validity of the State Board of Equalization's policy requiring payments on delinquent taxes and accrued interest on taxes).

Plaintiff argues that the DOJ has acted *ultra vires* with its policy requiring in-person registration. Penal Code § 290.012(b) states that those adjudicated as violent sexual predators must verify their residence and employment once every ninety days "in a manner established by the

4

Department of Justice." Cal. Penal Code § 290.012(b). Defendant contends that the language of Penal Code § 290.012(b), in which the "manner" of registration is to be determined by the DOJ, authorizes the DOJ to require registration in-person. Mot. to Dismiss at 4. According to Defendant, the purpose of in-person registration is to verify that the individual still resides at the registered address. *Id.* at 5. This rationale is consistent with the intent of the statute: to verify the location and whereabouts of those adjudicated to be sexually violent predators for public safety purposes. *Id.* Plaintiff does not dispute the purpose behind the policy.

The DOJ did not act *ultra vires* in requiring in-person registration for SVPs. Rather, the agency action of the DOJ is within the scope of authority conferred by the Legislature. Section 290.012(b) explicitly delegates to the DOJ determination of the "manner" in which those adjudicated as SVPs must verify their residence and employment. The DOJ's interpretation requiring in-person registration is consistent with the plain language of that delegation: in-person registration is a "manner" by which an SVP individual may be made to verify their residence. Second, the in-person registration requirement also effectuates the purpose of the statute. In-person registration provides more concrete assurance that the residence claimed by the individual is valid. As the Ninth Circuit noted in *Hatton v. Bonner*, 356 F.3d 955, 966 (9th Cir. 2004) in-person registration "is reasonable because it provides a means of confirming that the information provided about [the registrant's] physical appearance is accurate." The DOJ did not act *ultra vires* in requiring in-person registration.

B.  The Fourteenth Amendment Due Process Clause

"The right to pursue a livelihood without undue interference is an individual right recognized by the Constitution as inherent in the concept of liberty." *Burns v. Brinkley*, 933 F. Supp. 528, 531 (E.D.N.C. 1996). The Supreme Court has stated that there is "some generalized due process right to choose one's field of private employment" but this liberty is "nevertheless subject to reasonable government regulation." *Conn v. Gabbert,* 526 U.S. 286, 291-92 (1999). A right to employment in a particular job is not fundamental. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 313 (1976). A standard "less than strict scrutiny 'has consistently been applied to state legislation restricting the availability of employment opportunities.'" *Id.* Rather, the rational basis test has

been applied to state laws restricting employment opportunities. *Dandridge v. Williams,* 397 U.S. 471, 485 (1970).

The Ninth Circuit has recognized a liberty interest in pursuing an occupation of one's choice. *See Dittman v. Cal.,* 191 F.3d 1020, 1029-30 (9th Cir. 1999). An individual who is unable to pursue a particular occupation due to an arbitrary government action lacking a rational basis can make a cognizable substantive due process claim. *Wedges/Ledges of California v. City of Phoenix,* 24 F.3d 56, 65 (9th Cir. 1994); *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991); *Zwick v. Freeman*, 373 F.2d 110, 118 (2d Cir. 1967). *Zwick* involved a due process challenge to a statute that was "enacted in order to prevent circumvention of the purposes behind the [Perishable Agricultural Commodities Act]" by excluding flagrant violators and their associates from all employment, "in any capacity in the . . . industry for a period of at least one year." *Id.* The court found that Congress had the right to allow the Secretary of Agriculture to "exclude persons in petitioners' position from all employment in the industry." *Id.* While noting that "the result Congress desired could be harsh in some cases," the Court upheld the statute, finding it to be "reasonably designed to achieve the desired Congressional purpose." Under the rational basis standard of review, the court considers "whether the challenged state action rationally furthers a legitimate state purpose or interest." *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 55 (1973).

Here, Plaintiff alleges that he cannot find employment as a truck driver because such employment would *likely* cause him to miss the ninety day in-person registration deadline. Compl. at 3. He explained he would likely be on the road on the day registration is required as there is no flexibility as to the date of registration. At the January 3, 2011 hearing, Plaintiff complained that he must register on the eighty-ninth or ninetieth day after his last registration, and that there is no flexibility in that requirement, and thus DOJ's implementation of Penal Code § 290.012(b) is unlawfully restrictive and interferes with either his potential employment or his ability to register.

In a January 10, 2011 letter-brief from Kamala Harris, Attorney General of California, the DOJ clarified that an SVP may register anytime *before* the end of the ninety day period. *See* Letter at 2 (Docket No. 16). That is, an SVP must register *at least* once every ninety days, and need not

wait until the eighty-ninth or ninetieth day before registering again. *See id.*[1] The DOJ's clarifying interpretation is consistent with § 290.012(b) which merely requires registration "once every ninety days." The statute does not require the registration must await the ninetieth day.

Accordingly, an SVP registrant like Plaintiff is afforded flexibility around his work schedule. In the instant case, the complaint does not mention any specific instance in which Plaintiff's employment was actually threatened or precluded by the registration requirement. Not only does this claim lack specificity, it is also implausible that Plaintiff is unable to pursue his occupation as a truck driver because of the registration requirement, particularly in light of the flexibility in the registration afforded under the DOJ's interpretation of the statute.[2] Plaintiff's complaint fails to meet the plausibility standard of *Twombly* and *Iqbal* in establishing a deprivation of liberty.

Furthermore, even if he had stated such a deprivation, Plaintiff fails to establish a due process violation. He has not demonstrated that the registration requirement as interpreted by the DOJ is irrationally or unreasonable under *Conn v. Gabbert*, *supra*, *Dandridge*, *supra*, and *Wedges/Ledges of California*, *supra*. As noted above, in-person registration provides added assurance of veracity. *See Hatton*, 356 F.3d at 962.

C.  Section 290 Does Not Implicate the Double Jeopardy Clause

When determining if a statute is punitive, the test is the same for a double jeopardy claim and an *ex post facto* claim. *Russel v. Gregoire*, 124 F.3d 1079, 1087, n.6 (9th Cir. 1997) (the Court in *Hendricks* used the same test for both the double jeopardy and *ex post facto* claims. 521 U.S. at 361-71.). Therefore, the Supreme Court's decision in *Smith v. Doe I*, 538 U.S. 84 (2002), and the Ninth Circuit's decision in *Hatton v. Bonner*, *supra*, 356 F.3d 955 which address *Ex Post Facto* challenges state sex offender statutes provide the analytical framework for Plaintiff's claim herein.

---

[1] Since the DOJ is charged with implementing Penal Code § 290.012(b), its letter clarifying its implementation policy may be judicially noted. The Court may consider Defendant's letter interpreting the statute as the authorized enforcing agency under Fed. Rule of Evidence 201 (and does so) without converting the motion into a motion for summary judgment. *See MGIC Indem. Corp.* v. *Weisman,* 803 F.2d 500, *504* (9th Cir. 1986); *Sliefel Bechtel Corp.,* 497 F. Supp. 2d 1138, 1144 (S.D. Cal. 2007).

[2] Should a law agency impose a strict ninety day registration requirement, this Order is not meant to preclude Plaintiff from challenging such requirement.

In the *Hatton* and *Smith* the courts first considered the legislative intent of the statute. *Smith*, 538 U.S. at 91-92. *Hatton*, 365 F.3d at 961. If the purpose was not punitive, the courts then analyze the effects of the statute by applying the seven factors identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) to determine whether the effects of the statute are punitive. *See Hatton*, 365 F.3d at 963. The *Mendoza-Martinez* factors are: (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only on a finding of scienter; (4) whether the sanction's operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction rationally may be connected is assignable to it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Mendoza-Martinez*, 372 U.S. at 168-69.

In evaluating the double jeopardy claim, the Court must first determine if the legislature intended the statute to be civil or punitive. *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997). Typically, deference is given to the legislature's "stated intent." *Id.* The legislature's manifest intent is only rejected "where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id.* (quoting *United States v. Ward*, 448 U.S. 242, 248-249 (1980).

Applying the analysis in *Hendricks* and the *Mendoza-Martinez* factors, the Court finds that the legislature did not intend § 290 generally and § 290.012(b) in particular to be punitive. The California Legislature intended § 290 to serve not as punishment but as an "immediate preservation of the public peace, health and safety." Historical and Statutory Notes, Cal. Penal Code § 290, § 53 of Stats.2007, c. 579 (SP 172) (2007). *Hatton* held that the legislative intent for § 290 was nonpunitive. *Hatton*, 356 F.3d at 962. *Hatton* referenced the 1996 amendments in which the California Legislature stated: "To protect the safety and general welfare of the people of this state, it is necessary to provide for continued registration of sex offenders." *Id.* at 961-62 (quoting 1996 Cal Legis. Serv. ch. 908, § 1(f) (A.B.1562)). The Legislature also stated that the "registration of sex offenders . . . will further the governmental interests of public safety." *Id.* (quoting 1996 Cal Legis.

8

1  Serv. ch. 908, § 1(e)). Moreover, the California Supreme Court has held that § 290 was "enacted to
2  serve a regulatory purpose." *Hatton*, 356 F.3d at 962 (citing *People v. Castellanos*, 21 Cal. 4th 785).

3  In 2007, § 290 was repealed and the provisions imposing registration requirements on sex
4  offenders were reorganized and renumbered. 3 Witkin, Cal. Crim. Law 3d (2010 supp.) Punishment,
5  § 184, at 117. These provisions are now in Penal Code §§ 290 to 290.023. *Id.* The predecessor to
6  § 290.012(b) was former Penal Code § 290(*l*)(2). *Id.* at 121. *See* Legislative Counsel"s Digest, SB
7  172, CA Legisl. 579 (2007) (stating that "[e]xisting law requires persons who have been convicted
8  of specified crimes, and other persons as required by a court, to register as a sex offender. Existing
9  law sets forth the procedure for doing so. . . .This bill would reorganize and renumber the provisions
10 that set forth that procedure, and would make conforming technical changes in related provisions of
11 law."). Section 290(*l*)(2) was effective and operative on October 6, 1997 (chapter 821, section 3).
12 Nothing suggests that the legislative purpose in acting § 290(*l*)(2) which addressed registration of
13 SVPs, was different from the overarching purpose of § 290. The Legislature has stated that
14 registration is necessary for the "safety and general welfare of the people of this state." Section 1 of
15 Stats.1996, c. 908 (A.B.1562).

16 Furthermore, as the registration requirement of Penal Code § 290.012(b) applies to SVPs, the
17 Court also cross-references the legislative history of Welfare and Institutions Code § 6600 *et seq.*
18 which created the SVP classification, to determine whether the Legislature had a punitive purpose.
19 It did not. *See Hubbart v. Superior Court*, 19 Cal. 4th 1138, 1144 (1999) (citing Stats. 1995, ch.
20 663, § 1) (the SVPA is not unconstitutional and does not violate due process, equal protection and *ex*
21 *post facto* principles). Rather, the purpose of SVPA is to "protect the public from dangerous felony
22 offenders with mental disorders." *People v. McKee*, 47 Cal. 4th 1172, 1203 (2010) (citation
23 omitted). *See also People v. Carroll*, 158 Cal. App. 4th 503, 510 (2007) (addressing SVPA civil
24 commitment proceedings). Indeed, the California Supreme Court in *People v. McKee*, in finding
25 that the SVPA civil commitments were constitutional, reiterated that the SVPA had nonpunitive
26 objectives. *McKee*, 47 Cal. 4th at 1194.
27 ///
28 ///

Further, there is no indication that the DOJ's interpretation of § 290.012(b) to require in-person registration once every ninety days (and not necessarily on the ninetieth day) had a punitive purpose. As noted above, there is a rational reason for the requirement.

Having determined neither the California Legislature nor the DOJ intended § 290.012(b) to be punitive, the Court next considers whether the effects of the statute are punitive. *Hendricks*, 521 U.S. at 361 (internal citations omitted). In analyzing whether the effects of the statute are punitive, courts apply the seven factors listed in *Mendoza-Martinez*. *Hatton*, 356 F.3d at 963; *see also Smith*, 538 U.S. at 96. As noted above, the *Mendoza-Martinez* factors are: (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only on a finding of scienter; (4) whether the sanction"s operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction rationally may be connected is assignable to it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Mendoza-Martinez*, 372 U.S. at 168-69. The Court considers each factor in turn.

As to the first, whether § 290.012(b) imposes an affirmative disability or restraint, *Smith* held that if the disability or restraint is minor or indirect, its effect are not likely punitive. *Smith*, 538 U.S. at 99. As noted in *Hatton*, registration requirements under § 290 do not impose a physical restraint and do not involve imprisonment. *See Hatton*, 356 F.3d at 963. As found above and as found in *Hatton*, the registration requirement does not bar or restrain registrants from pursuing an occupation. *Id.* at 963. Significantly, *Hatton* specifically found that the in-person registration requirement did not make § 290 an affirmative disability or restraint. *Id.* at 964. Furthermore, the registration requirement of § 290.012(b) is less burdensome than Alaska's Sex Offender Registration Act ["Act"], which allows registration information to be posted on the Internet; that provision was found to be nonpunitive in *Smith*. *See Smith*, 538 U.S. at 85.

Second, the Court considers the historical meaning of the statute. *Smith* noted that sex-offender registration laws do not resemble the shaming punishments that occurred during colonial times. *Smith*, 538 U.S. at 98. *Hatton* likewise found no evidence that § 290 was meant to "shame,

10

ridicule, or stigmatize sex offenders." *Hatton*, 356 F.3d at 965. Moreover, *Hatton* noted that the California statute limits dissemination of registration information and is, thus, less humiliating that the Alaska statute upheld by *Smith*. *Id.* at 965. This second factor, therefore, weighs in favor of § 290.012(b) as nonpunitive.

Third, the Court analyzes whether the registration requirement is relevant *only* on a finding of scienter. *Mendoza-Martinez*, 372 U.S. at 168-69. The registration requirement at issue here applies only when one has been adjudicated as a sexually violent predator as defined in § 6600 of the Welfare and Institutions Code. Cal. Penal Code § 290.001. Under § 6600, a conviction as a sexual predator includes those found not guilty by reason of insanity. Cal. Welf. & Inst. Code § 6600 (a)(1), (2)(F). Therefore, the registration requirement does not occur *only* on a finding of scienter and weighs in favor of finding § 290.012(b) as nonpunitive.

Fourth, the Court considers whether § 290 promotes the traditional aims of punishment, particularly deterrence and retribution. *Mendoza-Martinez*, 372 U.S. at 168-69. *Hatton* noted that while it is possible that the sex-offender registration requirement may deter people who otherwise would commit that crime, the Supreme Court observed in *Smith* that many governmental programs may deter a crime without imposing a punishment. *Hatton*, 356 F.3d at 965. The Court noted if the mere finding of deterrence rendered a sanction "criminal," this would undermine the government's ability to effectively regulate. *Smith*, 538 U.S. at 102. In *Hatton*, the court noted that the California Legislature has specified that it does not intend for registration under § 290 to be retributive. *Hatton*, 356 F.3d at 965 (citing 1996 Cal. Legis. Serv. ch. 908, § 1(g) (A.B.1562) (stating that the "Legislature does not intend the registration information to be used to inflict retribution or additional punishment)). Nothing suggests § 290.012(b) was intended to promote the traditional aims of punishment.

Fifth, the Court considers if the behavior sanctioned is already criminalized. *Mendoza-Martinez*, 372 U.S. at 168-69. Under California Welfare and Institutions Code § 6600, those found not guilty by reason of insanity for such sexual predator crimes also must comply with the registration requirements. Cal. Welf. & Inst. Code § 6600. Therefore, as found in *Hatton*, § 290 does not only apply to those who have been convicted of a crime. *Hatton*, 356 F.3d at 966.

11

Sixth, the Court analyzes whether the challenged statute has a rational connection to a nonpunitive purpose. *Mendoza-Martinez*, 372 U.S. at 168-69; *see also Smith*, 538 U.S. at 102 (describing this as "a most significant factor" in the *Mendoza-Martinez* analysis). In *Smith*, the Court found the sex offender registration law to have a legitimate, nonpunitive purpose of public safety. *Id.* at 103. *Hatton* likewise found that § 290 "bears a rational connection to the nonpunitive purpose of public safety." *Hatton*, 356 F.3d at 966. Section 290.012(b) is rationally related to the nonpunitive purpose of public safety.

Seventh, the Court examines whether the sanction appears excessive in relation to the alternative purpose assigned. *Mendoza-Martinez*, 372 U.S. at 169. *See Smith*, 538 U.S. at 105 (issue is "whether the regulatory means chosen are reasonable in light of the nonpunitive objective."). In *Hatton*, the court found that § 290 is not excessive considering its nonpunitive objective. *Hatton*, 356 F.3d at 966. In fact, the *Hatton* court noted that § 290's notification provision was less burdensome than Alaska Act as the information released under § 290 is more limited. *Id.* It also noted that while § 290 required in-person registration, this was reasonable as it "provides a means of confirming that the information provided" is accurate. *Id.* Section 290.012(b) is not excessive in relation to the purpose of protecting public safety.

Thus, *Hatton*, though not dispositive, is persuasive. The only difference between § 290 as it existed under *Hatton* and § 290.012(b) as interpreted by the DOJ here is the requirement that there be in-person registration once every ninety days. Given the flexibility with which registration can occur within any ninety day period, and the fact that *Hatton* approved the requirement of in-person registration, the Court finds § 290.012(b) is not unduly onerous or excessive in relation to its purpose of protecting public safety.

Accordingly, under the seven *Mendoza-Martinez* factors, the effects of § 290.012(b) are nonpunitive. The Court accordingly finds that, even assuming the allegations in the complaint to be true, the registration requirement under Penal Code § 290.012(b) as interpreted by the DOJ is not punitive, and thus Plaintiff has failed to state a claim for relief under the Double Jeopardy clause.

///

///

### IV. CONCLUSION

For the reasons stated above, the Court accordingly **GRANTS** Defendant's motion to dismiss with prejudice. This dismissal of the claim against the DOJ is not meant to adjudicate any dispute that might arise between Mr. Litmon and a local law enforcement agency pertaining to the actual implementation and enforcement of Penal Code § 290.012(b).

This order disposes of Docket No. 8.

IT IS SO ORDERED.

Dated: March 15, 2011

_____
EDWARD M. CHEN
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LITMON, JR., | No. C-10-3894 EMC |
| Plaintiffs | |
| v. | **CERTIFICATE OF SERVICE** |
| EDMUND G. BROWN, Attorney General of California, | |
| Defendants. | |
| _____/ | |

I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

**DAVID LITMON, JR.**
29083 Mission Boulevard, Apt. 207
Hayward, CA  94544

Dated:  March 15, 2011                             RICHARD W. WIEKING, CLERK


                                                                By: _____/s/ Leni Doyle_____
                                                                        Leni Doyle
                                                                        Deputy Clerk