UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID LITMON, JR., | No. C-10-3894 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| EDMUND G. BROWN, Governor of California; and KAMALA D. HARRIS, Attorney General of California, | **(Docket No. 56)** |
| Defendants. | |

Plaintiff David Litmon, Jr. has filed suit against Kamala Harris, the Attorney General of California, alleging that his equal protection rights have been violated because the Attorney General requires him – but not other similarly situated persons – to appear in person every 90 days to verify his address and place of employment pursuant to California Penal Code § 290.012(b). The Attorney General has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered the parties' briefs, as well as the oral argument of counsel and Mr. Litmon, proceeding pro se, the Court hereby **GRANTS** the motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

California Penal Code § 290.012(b) provides in relevant part as follows:

> [E]very person who has ever been adjudicated a sexually violent predator, as defined in Section 6600 of the Welfare and Institutions Code, shall, after his or her release from custody, verify his or her address no less than once every 90 days and place of employment,

including the name and address of the employer, in a manner
established by the Department of Justice.

Cal. Pen. Code § 290.012(b). It appears to be undisputed that the Department of Justice requires that the verification be made in person (at a police station). *See* Compl. at 1.

As alleged in the complaint, Mr. Litmon was civilly committed as a sexually violent predator from May 2, 2000, to May 2, 2002, and from May 2, 2002 to May 2, 2004. *See* Compl. at 2. In 2007, Mr. Litmon's two-year civil commitments were retroactively converted to indeterminate commitments. *See* Compl. at 2. On April 23, 2008, a California court of appeal held that the retroactive indeterminate commitment was improper. *See* Compl. at 2; *see also People v. Litmon*, 162 Cal. App. 4th 383 (2008). Upon remand to the state superior court, the prior two-year civil commitments were not reinstated and Mr. Litmon was released from custody on September 4, 2009. *See* Compl. at 2.

Since his release from custody, Mr. Litmon has been required to verify his address and place of employment in person every 90 days pursuant to California Penal Code § 290.012(b). *See* Compl. at 3. Mr. Litmon asserts that his equal protection rights have been violated because other persons who have been civilly committed, including but not limited to persons who have been committed for the same kinds of sex offenses, are not subject to a 90-day in-person registration requirement. *See* Compl. at 3-4 (citing California Penal Code § 2960 (legislative findings regarding mentally disordered prisoners) and California Welfare & Institutions Code § 6300 (statute, repealed in 1981, on mentally disordered sex offenders)).

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are

insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." Iqbal, 129 S. Ct. at 1949.

B. Equal Protection

As a general matter, where an equal protection claim is based on membership in a suspect class such as race or the burdening of a fundamental right, then strict scrutiny is applied; otherwise there is only rational review. *See Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277-78 (9th Cir. 2005) (stating that, "[w]hen no suspect class is involved and no fundamental right is burdened, we apply a rational basis test to determine the legitimacy of the classifications").

Mr. Litmon claims there is a suspect class at issue, but the Court does not agree. Courts have found that race qualifies as a suspect class as does religion and national origin, *see Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001), but no court appears to have held that sex offenders, civilly committed persons, or persons once civilly committed and then released constitute a suspect or even a quasi-suspect class for purposes of equal protection. *See, e.g.*, *United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001) (stating that "[s]ex offenders are not a suspect class"); *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990) (stating that "[p]risoners do not constitute a suspect class"); *Larson v. Goodman*, No. 09-3600 (PAM/AJB), 2010 U.S. Dist. LEXIS 117253, at *3 (D. Minn. Nov. 3, 2010) (stating that "[n]o court has recognized, for the purposes of a constitutional claim, a suspect class consisting of pro se litigants, mentally ill persons, or civilly committed sex offenders"); *People v. Sumahit*, 128 Cal. App. 4th 347, 354 n.3 (2005) (stating that "SVP [sexually violent predator] prisoners are certainly not a suspect class").

Mr. Litmon also argues, however, that heightened scrutiny is justified because a fundamental right is at issue – namely, his right to substantive due process. Previously, this Court issued an order

1 dismissing Mr. Litmon's claim for violation of substantive due process. *See* Docket No. 19 (order).
2 In that claim, Mr. Litmon alleged that the Attorney General's implementation of § 290.012(b)
3 unlawfully interferes with his ability to pursue employment as a truck driver because the Attorney
4 General requires him to register on exactly the eighty-ninth or ninetieth day after his last
5 registration. In a letter brief, the Attorney General disputed this contention. According to the
6 Attorney General, a "SVP may register anytime *before* the end of the ninety day period" – *i.e.*, a
7 "SVP must register *at least* once every ninety days, and need not wait until the eighty-ninth or
8 ninetieth day before registering again." Docket No. 19 (Order at 5-6) (emphasis in original). In
9 short, according to the Attorney General, there is some flexibility as to the date of registration.[1]
10 Based on that representation by the Attorney General, the Court held that the substantive due
11 process claim did not plausibly establish a due process violation under the standard of *Twombly* and
12 *Iqbal*. *See* Docket No. 19 (Order at 7) (concluding that it is "implausible that Plaintiff is unable to
13 pursue his occupation as a truck driver because of the registration requirement, particularly in light
14 of the flexibility in the registration afforded under the DOJ's interpretation of the statute").

15 Because the Court dismissed the substantive due process claim, the Attorney General has
16 essentially taken the position that no fundamental right is implicated for purposes of Mr. Litmon's
17 equal protection claim. At the hearing, however, the Court expressed concern over whether the
18 Attorney General's interpretation of § 290.012(b) has been adequately communicated to law
19 enforcement. The Court therefore asked the Attorney General to provide a copy of the sex
20 registration form that the California Department of Justice has law enforcement use.

21 Having reviewed that form, *see* Docket No. 66 (Exhibit A) (form), the Court finds that it
22 does indicate to law enforcement that registration may be done at any time before the end of the
23 ninety-day window. In particular, on page 2 of the form, a registrant is required to acknowledge
24 that, if he or she has "ever been committed as a sexually violent predator, I must update my
25 registration information in person, *no less than* once every 90 days with the law enforcement agency

---

[1] The Attorney General's interpretation is consistent with the plain language of § 290.012(b). *See* Cal. Pen. Code § 290.012(b) (requiring registration "*no less than* once every 90 days and place of employment") (emphasis added). Requiring registration on the eighty-ninth or ninetieth day only would be at odds with the plain language of the statute.

4

having jurisdiction over my residence or transient location." Docket No. 66 (Exhibit A) (item 11 on page 2) (emphasis added). The use of the phrase "no less than" – the same phrase that is used in § 290.012(b) – underscores to law enforcement that registration may take place on any day before the ninety-day period passes. Accordingly, the Court reaffirms its prior holding that Mr. Litmon has failed to state a claim for violation of substantive due process.[2]

Because strict scrutiny is not applicable (*i.e.*, no suspect class and no fundamental right), the only question remaining for the Court is whether the SVP registration requirement passes rational review.

The Court begins by noting that there is a rational basis for requiring the registration of persons who have committed sexual offenses (as opposed to other crimes) – namely, because of the substantial risk of recidivism. *See* Cal. Pen. Code § 290.03(a)(1) (legislative finding that "[s]ex offenders pose a potentially high risk of committing further sex offenses after release from incarceration or commitment"); *id.* § 290.03(b) (stating that the purpose of the Sex Offender Punishment, Control, and Containment Act is to "reduc[e] the risk of recidivism"); *see also Smith v. Doe*, 538 U.S. 84, 103 (2003) (in discussing Alaska sex offender registration statute, stating that "Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism[;] [t]he legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class"); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002) (noting that "any reasonably *conceivable* state of facts . . . could provide a rational basis for the classification") (emphasis added).

Mr. Litmon points out that there are more stringent registration requirements for sexually violent predators. More specifically, sexually violent predators are required to register every 90 days (and in person); other sexual offenders are only required to register annually. *See* Cal. Pen.

---

[2] The Court does not opine whether Mr. Litmon may have a viable claim against a local law enforcement agency if, in fact, it requires registration on exactly the eighty-ninth or ninetieth day, thereby impinging on his employment. The Court emphasizes that Mr. Litmon has not stated a viable claim against the Attorney General as the Attorney General has not caused a misinterpretation of § 290.012(b) in this regard. *Cf. Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (noting that supervisory official may be liable under § 1983 only if he was personally involved in the constitutional deprivation, or if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation").

Code § 290.012(a) (providing that, "[b]eginning on his or her first birthday following registration or change of address, the person shall be required to register annually"). But here as well there is a rational basis for this distinction. A sexually violent predator is "a person who has been convicted of a *sexually violent offense* against one or more victims and who has a *diagnosed mental disorder* that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." Cal. Welf. & Inst. Code § 6600(a)(1) (emphasis added).[3] It is rational to require more rigorous monitoring of persons who have committed sexually violent offenses and who have a condition that predisposes them to committing such offenses. The California legislature and the Attorney General in implementing the legislation could have rationally concluded that such persons present a higher risk of harm and recidivism.

The Court acknowledges that persons who were determined to be mentally disordered sex offenders under the now-repealed California Welfare & Institutions Code § 6300 are included among those sex offenders not subject to the 90-day in-person registration requirement. *See* Cal. Pen. Code § 290.004. But, as above, there is a basis for distinguishing sexually violent predators from mentally disordered sex offenders. Section 6300 provided that a mentally disordered sex offender is "any person who by reason of mental defect, disease, or disorder, is predisposed to the commission of sexual offenses to such a degree that he is dangerous to the health and safety of others." Cal. Welf. & Inst. Code § 6300 (repealed in 1981); *see Hatton v. Bonner*, 356 F.3d 955, 966 (9th Cir. 2003) (quoting statute). While a mentally disordered sex offender, like a sexually violent predator, has a predisposition to committing a sexual offense, such an offender, unlike a sexually violent predator, has not necessarily committed a sexually *violent* offense. It is not irrational to subject an offender who may not have committed a sexually violent offense to be subject to less stringent registration requirements than one who has committed such an offense. To the extent a mentally disordered sex offender may have committed a sexually violent offense, the

---

[3] Sexually violent offenses are certain sexual offenses (*e.g.*, rape, sodomy, lewd or lascivious acts involving children) "committed by force, violence, duress," etc. Cal. Welf. & Inst. Code § 6600(b). A diagnosed mental disorder "includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." *Id.* § 6600(c).

6

Attorney General fairly points out that § 6300 was repealed back in 1981 and thus "the Legislature could [in enacting §§ 290.004 and 290.012 in 2007] rationally conclude that such individuals pose less of a threat thirty years or more after they were committed."[4] Mot. at 11.

In his opposition, Mr. Litmon protests that the analysis above is not appropriately conducted at the 12(b)(6) juncture but rather should be reserved for summary judgment proceedings. But the Attorney General is entitled to make the rational review challenge at this stage of the proceedings because so long as "any reasonably *conceivable* state of facts . . . could provide a rational basis for the classification," then her actions will be deemed to comport with equal protection. *See SeaRiver*, 309 F.3d at 679 (emphasis added); *see also Heller v. Doe*, 509 U.S. 312, 320 (1993) (stating that "[a] State . . . has no obligation to produce evidence to sustain the rationality of a statutory classification"; that "'[a] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data'"; and that "[a] statute is presumed constitutional, and 'the burden is on the one attacking the legislative arrangement to

---

[4] In his complaint, Mr. Litmon has cited not only § 6300 mentally disordered sex offenders as similarly situated persons but also persons who are mentally disordered under California Penal Code § 2960 *et seq.* This comparison is not appropriate. Section 2690 does not deal with registration requirements but rather with mental health treatment (and not just for sex offenders). There is nothing to indicate that, upon release from custody, a sex offender could not be required to get mental health treatment under § 2960 *et seq. and* register under § 290.012, so long as the circumstances warranted such.

The Court acknowledges that, in *People v. McKee*, 47 Cal. 4th 1172 (2010), the California Supreme Court did compare sexually violent predators and mentally disordered offenders for purposes of an equal protection claim but that was in the context of examining whether there was a justification for differential treatment in *confinement – i.e.*, a mentally disordered offender is committed for a one-year period and thereafter has the right to be released unless the government proves beyond a reasonable doubt that he or she should be recommitted for another year; in contrast, a sexually violent predator is given an indeterminate commitment and thereafter has the burden to prove that he or she should be released. *See id.* at 1202. Furthermore, the Court in *McKee* expressly stated that its holding did

> not mean that statutes pertaining to sexual offenders in general must be subject to heightened scrutiny. The lifetime *registration requirements* imposed by Penal Code section 290, for example, do *not* involve the loss of liberty. Such regulatory statutes not involving affirmative disability or restraint, are *subject to rational basis review*, and the Legislature will be given wide latitude to decide who should be subject to registration requirements.

*Id.* at 1211 n.14 (emphasis added).

negative every conceivable basis which might support it'") (emphasis added). Moreover, contrary to what Mr. Litmon suggests, courts can and do make rational review determinations at the 12(b)(6) phase. *See, e.g.*, *Aleman v. Glickman*, 217 F.3d 1191 (9th Cir. 2000) (holding at 12(b)(6) phase that statute favoring widowed spouses over divorced spouses for purposes of eligibility for food stamps was not irrational); *Taylor v. Rancho Santa Barbara*, 206 F.3d 932 (9th Cir. 2000) (holding at 12(b)(6) phase that federal and state statutes allowing mobile home parks to refuse to rent to tenants under 55 years survived rational review).

Finally, to the extent Mr. Litmon argues that the above analysis is not proper because he "does not fit the legal definition of a [sexually violent predator]" – *i.e.*, although he was "previously committed under that law, . . . all petitions were subsequently ordered dismissed by the [California court of appeal]" – that argument is without merit because § 290.012(b) applies by its terms to "every person who has *ever* been adjudicated a sexually violent predator." Cal. Pen. Code § 290.012(b) (emphasis added). As the Court noted in its prior order, "[o]n April 23, 2008, the California Court of Appeals reversed the trial court decision to recommit Plaintiff for an indeterminate period, but left his underlying SVP determination undisturbed." Docket No. 18 (Order at 2).

Accordingly, the Court agrees with the Attorney General that her actions satisfy the rational review standard. In so holding, the Court takes into account the arguments made by Mr. Litmon in a supplemental brief filed (without leave of Court) on January 12, 2012. *See* Docket No. 67 (response). None of these arguments has merit. For example, Mr. Litmon claims that "[t]here are many cases of persons being released from prison who re-offend at a greater rate than persons released from a SVPA civil commitment *(based on studies by the Justice Department of California)*." Docket No. 67 (Resp. at 2) (emphasis in original). However, Mr. Litmon does not cite to any particular studies. Nor has he, *e.g.*, established that, as a class, mentally disordered sex offenders who are not SVPs have a higher recidivism rate than SVPs.

The Court agrees with the Attorney General that Mr. Litmon has failed to state a claim for relief because there is a rational basis for the Attorney General to require sexually violent predators who have been civilly committed to register every 90 days in person but not other civilly committed

persons, including other sexual offenders. The equal protection claim is therefore dismissed. Because further amendment of the equal protection claim would be futile, the dismissal is with prejudice. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that, "in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts'"). There is no indication that "the challenged classification could not reasonably be viewed to further the asserted purpose." *Lazy Y Rand LTD v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008).

C. Exceeding Registration Requirement

Finally, at the hearing, Mr. Litmon argued that the Attorney General has been requiring SVPs to provide information during registration that exceeds the requirements of § 290.012(b). Section 290.012(b) by its terms requires a SVP to provide his or her address and his or her place of employment, including the name and address of the employer. The sex registration form submitted by the Attorney General has blanks for additional information – *e.g.*, identifying information and information related to the registrant's vehicles. According to Mr. Litmon, he must spend hours at the local law enforcement agency in order to provide the additional information required.

Although Mr. Litmon's complaint, as currently framed, does not include any claims based on the above facts, the Court shall, in the interest of moving this litigation forward, consider whether a claim based on such facts would have any merit. The only potentially viable federal constitutional claim based on the above facts that the Court can discern would be a claim for violation of substantive due process.[5]

"'The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.'" *Krainski v. State ex rel. Bd. of Regents*, 616 F.3d 963, 969 (9th Cir. 2010). In the instant case, the Court concludes that no

---

[5] The Court expresses no opinion as to whether Mr. Litmon may have a *state* claim against the Attorney General for seeking information beyond that required by § 290.012(b). To the extent Mr. Litmon asserts a state claim, the Court concludes that there is no claim over which it has original jurisdiction and therefore declines to exercise supplemental jurisdiction over the state claim. *See* 28 U.S.C. § 1367(c).

fundamental right or liberty interest has been implicated. While there is liberty interest in bodily integrity and, relatedly, in freedom from bodily restraint, *see Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (stating that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"), the Court is not persuaded that Mr. Litmon has been subjected to any such restraint. For example, Mr. Litmon does not contend that he was physically restrained in any manner while waiting to register. Nor does he assert that, once there to register, he was prevented from leaving until registration was completed. To the extent Mr. Litmon argues that he has been bodily restrained because he never should have been required to register in the first place, the Court does not agree. As noted above, § 290.12(b) requires SVP registration for "every person who has *ever* been adjudicated a sexually violent predator." Cal. Pen. Code § 290.012(b) (emphasis added). Thus, at most, Mr. Litmon is protesting the additional time (several hours) he has to spend at the local law enforcement agency to provide the additional information not expressly required by § 290.012(b). The Court finds, as a matter of law, that this is not a cognizable liberty interest.

Even assuming that there is a cognizable liberty interest, the Court concludes that there has not been a sufficient deprivation to give rise to a claim for violation of substantive due process. Mr. Litmon was required to register, and it was not unreasonable for Mr. Litmon to provide the additional information, which was largely identifying information to confirm that Mr. Litmon was who he claimed. Furthermore, there is nothing to indicate that Mr. Litmon was "detained" any longer than necessary or that the "detention" was otherwise unduly prolonged. *Cf. Baker v. McCollan*, 443 U.S. 137 (1979) (holding that the detention of an individual for three days on the basis of a facially valid search warrant did not amount to a deprivation of liberty without due process of law); *Fletcher v. City of Cleveland*, No. 1:09 CV 1925, 2010 U.S. Dist. LEXIS 62406, at *11 (N.D. Ohio June 23, 2010) (relying on *Baker* in stating that "[a] detention lasting a matter of minutes or hours, long enough to obtain fingerprints and compare them to information on a computer, certainly is not sufficient to rise to the level of a unconstitutional deprivation of liberty"). He cites no authority establishing the time required to personally appear and fill out the SVP registration form amounts to a deprivation of a liberty interest sufficient to violate due process.

### III. CONCLUSION

For the foregoing reasons, the Attorney General's motion to dismiss the equal protection claim is granted. The equal protection claim is dismissed with prejudice. In addition, because the Court does not find a cognizable substantive due process claim based on the allegation that the Attorney General has required SVPs to provide information during registration that exceeds the requirements of § 290.012(b), the Court orders that final judgment be entered against Mr. Litmon and the file in this case be closed.

This order disposes of Docket No. 56.

IT IS SO ORDERED.

Dated: January 25, 2012

_____
EDWARD M. CHEN
United States Magistrate Judge